# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1505
_____

United States of America

*Plaintiff - Appellee*

v.

Yacub Williams

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: January 12, 2024
Filed: April 1, 2024
_____

Before BENTON, ERICKSON, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

Police were lying in wait to arrest Yacub Williams at his girlfriend's home. When he pulled into her driveway and stepped out of her car, they moved in but lost him in a foot chase. After he got away, an officer asked his girlfriend if he could search the car. She said yes. He reached inside, flipped up a towel draped over the butt of a long object between the driver's seat and center console, and found a rifle.

The Government charged Williams with being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(2), and he moved to suppress the rifle. The district court[1] denied his motion because his girlfriend consented to the search.[2] He pleaded guilty, reserving his right to appeal the suppression ruling.

We review the district court's factual findings for clear error and its conclusion about whether the police violated the Fourth Amendment *de novo*. *United States v. Bermel*, 88 F.4th 741, 744 (8th Cir. 2023). Williams argues that his girlfriend did not have authority to agree to a search of what was under the towel in her car and that even if she did, her consent was not voluntary.

The Fourth Amendment generally forbids warrantless searches. *Id.* Consent is an exception to this rule and "may be given either by the suspect or by some other person who has common authority over, or sufficient relationship to, the item to be searched." *United States v. James*, 353 F.3d 606, 613 (8th Cir. 2003).

There's no question that Williams's girlfriend had authority to consent to a search of her car. *See United States v. Guzman*, 507 F.3d 681, 687 (8th Cir. 2007) (upholding search of defendant's girlfriend's truck because she consented to the search and, as the truck's owner, had the "right to admit others to it at *anytime*" (citation omitted)). But that's not enough, Williams says. He analogizes the towel strewn over the rifle's stock to a closed container like a backpack, arguing that his girlfriend did not have authority to consent to a search of what was hidden underneath it. *See, e.g.*, *United States v. Munoz*, 590 F.3d 916, 922–23 (8th Cir. 2010) (rental car occupant had no authority to consent to a search of another

---

[1]The Honorable Beth Phillips, Chief Judge, United States District Court for the Western District of Missouri, adopting in part the report and recommendation of the Honorable W. Brian Gaddy, United States Magistrate Judge for the Western District of Missouri.

[2]The court also denied his motion on the ground that he had relinquished any reasonable expectation of privacy in his girlfriend's car by abandoning it. Because we affirm on consent, we do not address abandonment. Nor do we address the plain view exception, which the Government raises as an alternate ground for affirmance.

occupant's closed backpack because there was no evidence that the former had joint use or shared control of it); *United States v. Banks*, 514 F.3d 769, 773 (8th Cir. 2008) ("Ordinarily, a warrant is necessary before police may open a closed container because by concealing the contents from plain view, the possessor creates a reasonable expectation of privacy."). This analogy quickly crumbles: a towel draped over only part of a rifle is not a closed container because it does not hold, let alone enclose, the rifle. *See United States v. Poggemiller*, 375 F.3d 686, 688 (8th Cir. 2004) (a container is "any object capable of holding another object" (quoting *New York v. Belton*, 453 U.S. 454, 461 n.4 (1981))). So all the officer needed to look under the towel was consent to search the car.

Williams argues next that his girlfriend did not voluntarily consent to the search.[3] We decide whether her consent was voluntary "under the totality of the circumstances" and through the lens of whether she "behaved in such a manner that the officer reasonably believed that" she had consented to the search. *United States v. Esquivias*, 416 F.3d 696, 700 (8th Cir. 2005). Voluntary consent is a factual finding reviewed for clear error. *United States v. Harris*, 55 F.4th 575, 580 (8th Cir. 2022).

"In evaluating the reasonableness of the officer's belief, we consider [Williams's girlfriend's] characteristics" and the "environment in which the alleged consent took place." *Esquivias*, 416 F.3d at 700. These considerations include: (1) her "age, intelligence[,] and education"; (2) whether she was under the influence of any substance; (3) whether she was "informed of h[er] right to withhold consent"; (4) whether she was "aware of" her rights; (5) the "length of time [s]he was detained"; (6) whether the "police threatened, physically intimidated, or punished h[er]"; (7) whether the "police made promises or misrepresentations"; (8) whether she was "in custody or under arrest" when she gave consent; (9) whether she gave

---

[3]Williams's girlfriend and the officer told very different stories about what led to the rifle's discovery. The district court reasonably credited the officer's testimony, *see United States v. Bennett*, 972 F.3d 966, 972 (8th Cir. 2020), so his story supplies the facts here.

consent "in a public or a secluded place"; and (10) whether she "stood by silently" during the search. *Id.*

Williams's girlfriend was 36 years old, appeared to be sober, and seemed to understand her discussion with the officer. True, the officer did not tell her that she could refuse consent, and police cars were surrounding her. But she knew that the police weren't after her, no one lied to or threatened her, and her interactions with the officer were "cordial and polite." She also stood by silently while the officer reached into her car and flipped up the towel. All told, the record amply supports the district court's finding that the officer reasonably believed that she had consented to the search. *See United States v. Fuller*, 374 F.3d 617, 622 (8th Cir. 2004) (district court did not clearly err in finding voluntary consent where there were three armed officers present, the person consenting was an adult with a high school education, and there was "no evidence that the police threatened or coerced him").

We affirm the district court's judgment.

_____